## Bosler's Estate

*W. E. Shissler*, for petitioner; *Joseph P. McKeehan*, for respondent.

Reese, P. J., January 25, 1932.—The second paragraph of the will of Sarah E. Bosler, who died on July 27, 1916, provided as follows:

"2. I give and bequeath to the Farmers Trust Company, of Carlisle, Pennsylvania, the sum of ten thousand ($10,000) dollars, *in trust, however*, to hold, invest and manage the same and to pay over the net income thereof, annually, to my daughter, Mary Bosler, during the term of her natural life, free from

anticipation, and free and discharged from the claims and demands of any creditors or other persons whomsoever, and without the right on the part of my said daughter, Mary, to encumber, assign, transfer or in any manner dispose of said income, or any part thereof, prior to the payment of said income to her by said trustee; and at the death of my said daughter, Mary, to pay said principal sum to her children or other direct descendants, then surviving, per stirpes, and in default of direct descendants her surviving, then to pay said principal sum to such person or persons, or in such manner, as my said daughter may by last will, in writing, direct, and, in default of direct descendants her surviving, or of disposition in writing of said sum by my said daughter, Mary, then to pay said principal sum to my other children who may survive her, and the issue of such as are then dead, per stirpes."

Mary Bosler, the beneficiary named therein, died October 6, 1930. Under her last will and testament, after directing the payment of funeral expenses and inheritance taxes and making certain specific bequests, by paragraphs five and six she directed as follows:

"5. I hereby empower and authorize my executrix hereinafter named to sell any and all the remainder and residue of my real estate and personal property and give good and sufficient title to same, and to turn the proceeds of the same over to the Farmers Trust Company, of Carlisle, Pennsylvania, to be held by them as hereinafter designated.

"6. I give and bequeath unto the Farmers Trust Company, of Carlisle, Penna., the proceeds of my estate, in trust, nevertheless, to invest and keep the same invested and pay over the net income from time to time unto my sister, Susan Lemen Bosler, for and during the full term of her natural life, free and clear of her debts, contracts, engagements, alienations and anticipations, and free and clear of all liens, attachments, executions and sequestrations, it being my intention to create a spendthrift trust in favor of my sister, Susan Lemen Bosler."

Newton L. Bosler, a surviving son of Sarah E. Bosler and a brother of Mary Bosler, has presented his petition praying that a citation issue, directed to the Farmers Trust Company, trustee under the last will and testament of Sarah E. Bosler, and to Susan Lemen Bosler, to show cause why distribution should not be made of the trust fund described in paragraph two of the will of Sarah E. Bosler by paying to the petitioner the one-fifth share of the said trust fund. It is admitted that Mary Bosler never married, and died without children or direct lineal descendants.

The sole question is whether the will of Mary Bosler operated as an execution of the power of appointment contained in her mother's will under section eleven of the Wills Act of June 7, 1917, P. L. 403 (reënacting section three of the Act of June 4, 1879, P. L. 88), which provides in part: "a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, which he may have the power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will."

It is conceded that under this act the power of appointment may be executed without a recital thereof or direct reference thereto: South's Estate, 248 Pa. 165; Huddy's Estate, 236 Pa. 276; Lloyd *v.* Fretz, 235 Pa. 538.

But it is contended by the petitioner that Mary Bosler had a contingent power of appointment, and that the statute has no application to such a power, and, therefore, the common-law rule applies, viz: that the donee of the power in

order to execute it must either refer to the power or actually dispose of the subject of it.

The petitioner in advancing this contention relies on Garman *v.* Glass, 197 Pa. 101, where a widow had a life estate in land with the power to revoke the testator's devise over of the remainder in case the devisees or any of them should not be "obedient to her during her natural life." In her will there was no affirmative decision or declaration by her that the children had been disobedient; and the court held the power was executed by a gift in her own will of all the rest and residue of her estate.

The petitioner contends that the power given to Mary Bosler was contingent upon her dying without surviving children or direct descendants, and the power, being contingent, does not fall within the quoted section of the Wills Act. But it is to be noted that in Garman *v.* Glass, supra, there is nothing to indicate that the contingency, disobedience of the children, ever occurred; and, therefore, the widow never had the power of appointment. In the instant case the power was dependent or contingent upon conditions which are conceded to exist. In the case relied on by the petitioner, Garman *v.* Glass, the court said: "If . . . [the testator] had made his widow's power to change his beneficiaries dependent on some one or more of them dying before her, no one would think of claiming that she could divest the remainder without the happening of the contingency." This language indicates that to determine whether the Wills Act applies to the power we are not to be governed by the mere fact that the power is contingent, but rather by a determination as to whether the contingency has occurred which confers the power.

We have found no case which directly holds that the power, simply because it is contingent, is to be excluded from the section of the Wills Act under consideration. In Duffy's Estate, 29 Dist. R. 379, the power was contingent upon the life tenant's death without issue, and Judge Gest repeatedly refers to the power as one within the statute.

The petitioner's next contention is that Mary Bosler's will did not execute a general power of appointment for the reason that a contrary intention appears by her will; that the provisions of her will clearly show her intent not to include in her testamentary assets all property over which she had power of appointment. In connection therewith, the following language of the court in Thompson *v.* Wanamaker's Trustee et al., 268 Pa. 203, 214, is pertinent: "the rule is ordained that he who, in any instance, denies that a general devise executes a general power of appointment, must prove 'by what appears on the face of the will' that it was testator's 'clearly expressed' intention the devise in question 'should not do so.' "

First, it is argued by the petitioner that this contrary intent appears from her direction that all inheritance taxes should be paid out of "my estate." But even the words "my estate" may include the estate over which there is a power of appointment: Blackburne's Estate, 290 Pa. 55; see, also, Pennsylvania Company's Account, 264 Pa. 433, 436.

Particularly, however, it is argued that paragraph six of the will under consideration shows an intent on the part of the testatrix not to execute the power. Under the provisions of paragraph six, the testatrix gives and bequeaths "the proceeds of my estate" to the Farmers Trust Company in trust for designated purposes. Paragraph five empowers and authorizes, but does not direct, her executrix to sell any and all of the remainder and residue of the real estate and personal property, and to turn "the proceeds of the same over to the Farmers Trust Company, of Carlisle, Pennsylvania, to be held by them as hereinafter designated."

It is argued that, by reason of the repetition of the words "the proceeds," the testatrix, in paragraph six, gave in trust to the Farmers Trust Company only the proceeds of the sale of her own real and personal property which she had authorized in paragraph five; that she could not authorize the sale of the estate or property over which she had the power of appointment; and that, therefore, she did not in paragraph six dispose of the property over which she had the power.

We cannot agree with the petitioner that this narrow and limited interpretation should be placed on the expression "the proceeds of my estate," appearing in paragraph six. To do so would create an intestacy as to property of the testatrix which the executrix did not sell under the authority of paragraph five and as to money of the testatrix on deposit in various banks, as well as all assets collectible from her debtors. We should construe the will, if reasonably possible, to avoid a partial intestacy. The word "proceeds" is a word of equivocal import. Its construction depends very much upon the context and the subject matter to which it applies: Thomson's Appeal 89 Pa. 36, 46. But the petitioner relies on the general rule of construction that where the same language is repeatedly used in a writing it is to be interpreted in the same way wherever it appears: Altdorfer's Estate, 225 Pa. 136; Blackburne's Estate, 290 Pa. 55, 58; and that the word "proceeds" should be given the same meaning in paragraph six as was intended in paragraph five. This rule of construction of words raises a prima facie presumption which must give way to a different intent on the part of the testator: Altdorfer's Estate, supra. For example, in Thomson's Appeal, 89 Pa. 36, the word "proceeds" when first used in the will meant the money realized from the sale of property, and the "proceeds" were the principal or corpus of the trust fund. When used later in the will the word "proceeds" was construed as meaning income arising from the trust fund.

It is to be noted that a will alleged to execute a power of appointment need not show the testator's intent so to do, but there is a presumption that a general bequest in the donee's will is an exercise of the power unless a contrary intention appears by the will. Thus, it is immaterial that the will creating the power was executed after the will of the donee of the power, a situation where there could be no intent to execute the power: Morris's Account, 298 Pa. 540; Blackburne's Estate, 290 Pa. 55.

Our appellate courts have said: "Where it is claimed one or more provisions in a will overcome the rule under discussion—that a general devise is presumed to execute a power of appointment—if the provisions relied on for that purpose are susceptible of reasonable explanation consistent with the operation of the rule, such explanation should be accepted:" Thompson *v.* Wanamaker's Trustee et al., 268 Pa. 203, 215; Blackburne's Estate, 290 Pa. 55.

We feel that the words "proceeds of my estate" in paragraph six of the will of Mary Bosler must be construed as meaning "the balance or residue of my estate;" that thus construed paragraph six is a general bequest of her property which is an execution of the power of appointment, and that the will does not reveal a clear intention not to execute the power. Therefore, the Farmers Trust Company is entitled to retain the fund in question and to administer it in accordance with the directions in paragraph six of the will of Mary Bosler.

And now, January 25, 1932, this proceeding is dismissed, the costs thereof to be paid by the petitioner.

From Francis B. Sellers, Carlisle, Pa.